### UNITED STATES v. ILLINOIS CENT. R. CO.

#### (District Court, E. D. Illinois. December 2, 1908.)

#### No. 754.

**1.** RAILROADS (§ 229\*)—SAFETY APPLIANCE ACT—GRABIRONS.

Under Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), as amended by Act Cong. March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885), regulating the equipment of freight cars to be used in interstate commerce, it is unlawful for a railroad company to use any car in interstate commerce, or car or similar vehicle used in connection therewith, that is not provided with secure grabirons or handholds at the ends and sides of such car for safety of men in coupling and uncoupling.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.\*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

**2.** RAILROADS (§ 229\*)—INTERSTATE COMMERCE—SAFETY APPLIANCE ACT—"CONNECTION."

Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), as amended by Act Cong. March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885), requires cars used in interstate commerce or cars used in "connection" therewith to be equipped with secure grabirons at the ends and sides of each car for the greater safety of men in coupling and uncoupling. *Held*, that a car used in intrastate commerce only, not so equipped, though moved in a train containing a car bearing interstate traffic was not used in "connection" therewith where they were in different parts of the train and not in position to be coupled or uncoupled.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.\*

For other definitions, see Words and Phrases, vol. 2, pp. 1432-1434; vol. 8, p. 7612.]

Edwin W. Sims, W. E. Trautmann, U. S. Attys., Geo. A. Crow, Asst. U. S. Atty., and Ulysses Butler, for the United States.

Edward C. Kramer and Bruce Campbell, for defendant.

WRIGHT, District Judge. In this case the defendant has confessed the first, third, fourth, and fifth counts of the declaration, and has pleaded not guilty as to the sixth count, upon which issue has been joined, a jury duly waived in writing, and the cause submitted to the court for trial upon a stipulation as to the facts. The law of the case has been argued at considerable length by counsel for both sides. The questions submitted to the decision and judgment of the court

arise under the "Safety Appliance Act" of Congress (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), so called, as amended by the act of March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. Supp. 1907, p. 885).

The specific charge in the sixth count of the declaration is that, in violation of the statute, the defendant hauled its own car No. 92,635, the same being regularly used in the movement of interstate traffic; one car in said train, G. & S. I. No. 581, containing interstate traffic, lumber consigned from a point within the state of Mississippi to a point within the state of Illinois; that defendant hauled said car as aforesaid from Carbondale, in the state of Illinois, in a northerly direction, when the grabiron on the right-hand side of the "A" end was missing, and not provided with secure grabirons or handholds for greater security to men in coupling and uncoupling cars. The stipulation as to the facts, upon which the case has been submitted for trial of the issue made upon the sixth count as before recited, states that car No. 92,635 contained freight which originated at a point in Illinois, destined to a point in Illinois, and during its transportation remained wholly in Illinois; that on the last-mentioned car there was a grabiron out of repair in manner and form charged in the sixth count, but while in that condition was wholly moved in the state of Illinois; that there was in said train another car, B. & S. I. No. 581, containing interstate traffic, as charged in the sixth count, and which was in no wise out of repair or defective in violation of the safety appliance act. The contention of the plaintiff is that the facts shown in the stipulation convict the defendant of a violation of the law, whilst the defendant disputes such contention.

The rule of the law to be deduced from the plain reading of the statute as amended by the act of 1903, applicable to the case before us, may, I think, be succinctly stated to be that it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grabirons or handholds in the ends and sides of each car for greater safety to men in coupling and uncoupling cars, and by the amendment of 1903 the prohibition of such use is extended to all trains, locomotives, tenders, cars, and similar vehicles used on any railroad engaged in interstate commerce, and to all other locomotives, cars, and similar vehicles used in connection therewith. Under the statement of the rule declared by the statute, it would follow that if a car containing an interstate shipment was locally hauled. as in this case, with other cars containing local freight only, and such local trip constituted any part, however short, of the interstate trip, and a car containing local freight only, out of repair as to grabirons, should be used in connection with the car containing the interstate shipment, the railroad so using the local car in connection with the interstate car would be guilty of a violation of the statute, and subject to its penalty.

So the case here presented resolves itself into a question of fact to be decided by the rule of the law that I have endeavored to reduce to a simple statement. If, therefore, car No. 92,635, being out of repair as to grabirons, was not used in connection with car No. 581,

containing interstate traffic, there would be no offense against the law. The burden of proof is upon the plaintiff to prove every material fact by a preponderance of the evidence, and, some courts have held in this class of cases, beyond a reasonable doubt. The only evidence here present that the defective car was used in connection with the interstate car is that there was in the train a car containing interstate traffic. Is this the same, or equivalent, as being in connection therewith? Will or can it be reasonably inferred from the fact that the interstate car was in the same train with the defective car, that the latter was used in connection therewith, or, which is the same thing, that they were used together? In determining the meaning of the term "used in connection therewith," it is important to find the reason of the enactment and the intention of the Congress. The object of the legislation in this regard was to make the use of interstate cars as safe as possible to the men who handle them. Grabirons were required for greater safety to men in coupling and uncoupling cars. Then, if the defective car was far remote from the interstate car in the train, there could be no possible danger from coupling or uncoupling. It seems plain that, if the cars are to be used in connection with each other, they should be in a position to be coupled or uncoupled, so that the danger intended to be avoided, by the act in question, would be imminent in case of the absence of sufficient handholds. The statement of facts falls far short of proving the essential or controlling fact—of a connection between the two cars. In the absence of proof, it will be presumed that the defective car was not used in connection with the interstate car, or that they were not in a position to be coupled or uncoupled.

Entertaining these views, the findings of the court will be for the defendant upon the sixth count of the declaration, and judgment in bar of the action thereon accordingly. The penalties against the defendant will be assessed at $100 each on the first, third, fourth, and fifth counts of the declaration, and separate judgments thereon given accordingly, with costs, and execution awarded.